People ex rel. Abbott v Wendland (2024 NY Slip Op 00840)

People ex rel. Abbott v Wendland

2024 NY Slip Op 00840

Decided on February 15, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 15, 2024

CV-23-0351
[*1]The People of the State of New York ex rel. Ashawn Abbott, Appellant,
v
Rosemarie Wendland, as Superintendent of Ulster Correctional Facility, et al., Respondents.

Calendar Date:January 8, 2024

Before:Garry, P.J., Pritzker, Lynch, Fisher and Powers, JJ.

Norman P. Effman, Warsaw, for appellant.
Letitia James, Attorney General, Albany (Frank Brady of counsel), for respondents.

Garry, P.J.
Appeal from an order of the Supreme Court (James P. Gilpatric, J.), entered February 6, 2023 in Ulster County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 70, without a hearing.
In 2007, petitioner was convicted of three drug charges and one weapons charge and was sentenced, as a second felony offender, to two determinate prison terms of 8½ years with 3½ years of postrelease supervision (hereinafter PRS), a determinate prison term of seven years with 3½ years of PRS and an indeterminate prison term of 3½ to 7 years, all of which were set to run concurrently. Petitioner was twice conditionally released to PRS and twice declared delinquent, resulting in recalculation of the maximum expiration of his 2007 sentence. In 2016, while still subject to the 2007 sentence, petitioner was convicted of additional drug-related offenses and sentenced, as a second felony offender, to two concurrent prison terms of two years, followed by three years of PRS, which were set to run consecutively to the 2007 sentence. The 2016 sentence was to be executed as a sentence of parole supervision pursuant to CPL 410.91, which included placement in a drug treatment program. Petitioner was released to parole supervision and, on multiple occasions, was declared delinquent. His sentence calculation was again adjusted accordingly.
In 2020, while still serving the aggregate of his 2007 and 2016 sentences, petitioner was sentenced, as a second felony offender, to a prison term of 5½ years followed by two years of PRS upon his conviction of a drug-related offense, which sentence ran consecutively to the 2007 and 2016 sentences. Recalculation of his aggregate prison term yielded a parole eligibility date of January 24, 2025, a conditional release date of August 11, 2025 and a maximum expiration date of June 30, 2026.
In 2022, petitioner entered a shock incarceration program and was subsequently issued a certificate of earned eligibility. Prior to petitioner's graduation from that program, the Board of Parole reviewed petitioner's case record and, despite his earned eligibility certificate, denied petitioner conditional release, holding him until his parole eligibility date of January 24, 2025. Petitioner thereafter commenced this habeas corpus proceeding for immediate release, asserting that the Board had no discretionary authority to deny his release following his successful completion of the shock incarceration program. Supreme Court dismissed the application, and this appeal ensued.
Petitioner contends that, upon his receipt of the earned eligibility certificate and successful completion of the shock treatment program, conditional release was mandated by Correction Law § 867 (4) and the Board was without discretionary authority to deny his release. We disagree. As is pertinent here, Correction Law § 867 (4) provides that "an incarcerated individual sentenced to a determinate sentence of imprisonment who has successfully completed a shock [*2]incarceration program shall be eligible to receive such a certificate of earned eligibility and shall be immediately eligible to be conditionally released." Petitioner's aggregate sentence, which represented the merger of the undischarged terms of his 2007, 2016 and 2020 sentences, however, includes the indeterminate sentence imposed in 2007 in addition to the determinate sentences. Petitioner did not complete the 2007 sentence prior to the imposition of either the 2016 or 2020 sentences. As such, the undischarged portion of the 2007 sentence was added to the consecutive 2016 sentence, the undischarged total of which was then added to the 2020 consecutive sentence to arrive at an aggregate term of imprisonment and yielded a single sentence (see Penal Law §§ 70.25 [2-a]; 70.30 [1] [a], [d]; People v Buss, 11 NY3d 553, 557 [2008]). Petitioner was still subject to an indeterminate term of incarceration at the time he completed the shock incarceration program and was not entitled to immediate release pursuant to Correction Law § 867 (4). Rather, given the nature of his aggregate sentence, the Board was within its authority to undertake discretionary review of whether petitioner should be released to parole following his successful completion of the shock incarceration program (see Penal Law § 70.40 [1] [a] [iv], [v]; Correction Law § 805; 9 NYCRR 8010.2 [b]).
Petitioner's contention that he is not serving a single aggregate sentence and assertion that People v Buss is distinguishable because its holding therein is limited to matters pertaining to the Sex Offender Registration Act (hereinafter SORA) are unavailing as "[n]othing in [that] case suggests that [the Court of Appeals'] interpretation of [Penal Law §] 70.30 was dependent upon SORA, or limited to SORA cases" (People v Brinson, 21 NY3d 490, 496 [2013]). We have reviewed petitioner's remaining contentions and find them to be unpersuasive.
Pritzker, Lynch, Fisher and Powers, JJ., concur.
ORDERED that the order is affirmed, without costs.